Good morning. May it please the court, my name is Manuel Rios and I represent the petitioner Mr. Emigdio Rios. I'd like to reserve three minutes for rebuttal. This is a petition for review of the Immigration Board of Immigration Appeals denial of Mr. Rios' sua sponte motion to reopen his reinstated removal order from 1998. The motion was based on the set-aside or the deportation order. Formerly, before the deportation order, Mr. Rios enjoyed the rights of a legal permanent resident of the United States. The court has jurisdiction to review the board's decision only to the extent to determine whether or not the board's decision was based on a legal or constitutional error. Now the board's denial of the motion to reopen sua sponte was based on the provision found at 1231.85 of 8 U.S.C. 1231.85. It served as a jurisdictional bar that absolutely precluded reopening. I don't know where you're getting that. I mean they said because the respondent is subject, we're without authority. Do you interpret that to mean we lack jurisdiction? Yeah, I do. I do, Your Honor. It seems to toe the line as far as all of the other cases that have ever been decided prior to sua de Oriana. If we look back starting with the one of the first cases, which is Garcia de Recon, that from that point on the court had stated that that there's a jurisdictional bar that's found here that can't be overcome and they don't have jurisdiction. So I think I would interpret that authority, lack of authority as to be equivalent of lack of jurisdiction. But we now know in sua de Oriana that this section, 1231.85, is not a jurisdictional bar. It's a claims processing bar. So as a procedural matter, what does it look like for us to review the denial of a motion to reopen while at the same time respecting that 1231.85 is a claims processing bar? Well, I think that the board's decision to not decide the case on the merits because of this, the former interpretation of 1231.85 requires a remand. I believe that that is a legal error that the court can use for remand. And I think that as a result of that, there are other issues that are going to flow from that as far as what is the proper standard that would potentially allow someone to overcome the claims processing rule, right? Or is there already one existing? If the court looks at the procedural posture of sua de Oriana, it's not especially clear, but they mentioned that it did come to the board underneath various theories. Two of them are equitable considerations that no one, the board did not quibble with, nor did the court as far as equitable tolling and sua sponte motion to reopen. So those were two of the theories that sua de Oriana came up to the court and the court decided that it did have jurisdiction. So, you know, it seems to me that in some ways the court accepted the fact that there are equitable avenues around this claims processing rule. And I think that that's really what the issue is going to be. Go ahead. I'm sorry. Well, just carrying on if 1231, if the BIA lacks discretion, once that is invoked, then it can't really review the underlying deportation order. Is that right? That is correct. But then it could look at the denial of the motion to reopen, which is different than attacking directly the deportation order. Correct? Sure. Maybe I'm a bit confused, Your Honor, but this Mr. Rios's motion to reopen was to the board, right? I understand. I'm sorry. It was to the board. It was not to the immigration judge. To the board. I said the BIA. I'm sorry if I didn't. Maybe I just misunderstood. I meant the BIA if I misstated. I'm sorry. But I was talking about the BIA. There's this mandatory aspect of 1231. So the BIA doesn't have any discretion to review the underlying deportation order. I think you agree with me on that. I think that I agree with you at the time of the decision. That is true. I do not believe that is true now. How is that right? I mean, the statute says that for somebody in your client's position who's subject to a reinstated removal order, that it's not subject to being reopened or is not subject to being reopened. So aren't you here asking on a motion to reopen to do just that? I am. But if the starting point is that 1231.85 is a claims absolute prohibitions on that are contained within that, such as the absolute prohibition on relief that has been carved out through regulations to allow for relief. And I think this is not an absolute bar. And I think that that's what the opening is through SWAT Oriana. I guess be that as it may. And I don't think I disagree with that. I guess the question would be, did the government forfeit that? Because that was the issue in SWAT. It was that the government had forfeited that or arguably had forfeited that mandatory claims processing rule. Whereas here, I understand they've they filed something in the board opposing this relief and they continue to do so here. Well, I think the way that I understood SWAT Oriana, Your Honor, is that the court specifically found that the board could entertain jurisdiction, take jurisdiction over motions to reopen reinstated orders. That seems fairly clear. It didn't have any type of conditional language on that, but it specifically stated that. And that is at 631 of that decision. So and furthermore, it stated that any of the prior jurisprudence that followed the fact that 1231.85 was a jurisdictional absolute jurisdictional bar, then those have been abrogated because they're inconsistent with the Supreme Court decision. So as a result, I think the difference between a claims processing rule and a jurisdictional bar makes all the difference in the world. That's the rub in this case, Your Honor. And in, you know, jurisdictional bars are subject to equitable considerations, such as equitable tolling or perhaps sui sponte to overcome to preside to human claims processing. Oh, excuse me. Yes, I think we it's hard to not confuse the two here because I've been back and forth with the cases. But you mean claims processing bars have an outlet. That is that is correct. All right. Thank you, Your Honor, for that clarification. And I think that, you know, as a as a result of that, that, you know, the this court has suggested that, you know, that jurisdictional bars, they have harsh often result in harsh outcomes, whereas the claims processing rules allow for equitable considerations to, you know, to have to make the rules not apply, for example, equitable tolling or the what we have here is the sui sponte motion to reopen, which would allow someone to to attack claims processing rules can be mandatory rules. Sure. Your Honor, I'm not saying that we have to ignore that. What I'm saying is that there may be existing or or other types of equitable considerations that may come up that allow for the court or, you know, the board to take jurisdiction over it. And, you know, claims processing rule, as Judge Paya's reference, can be mandatory. And, you know, it seemed here it would be if it was if it was properly invoked by the government. Do you contend the government did not properly invoke it? I do not. I believe that I think that that's true. How do we override the mandatory nature of it? Or do you claim it's not mandatory? I do not claim that it's mandatory. I don't think that that's what that's what the area said. I think that that for purposes of this particular case, that the the waiver claim is a red herring that it doesn't apply to this particular case because government didn't waive it. The government has has has vigorously stated that the whole time. So what what our position is, is that it can be overcome. And if the court looks at, you know, even before we get to the waiver part of the decision, the court has already made this decision that the board can take jurisdiction over it. Right. And then they're going to remand it. And in the remanded proceedings that the government is not going to be futile or an idle, you know, lark that simply because the government cannot raise that at that time, because if it is mandatory and if the government did raise it, where do you where do you get from that? That nonetheless, we don't have to enforce it. Oh, your honor, I if I stated that it's mandatory, then I'm mistaken. I did not. I do not believe it. You think it is not mandatory? That is correct. I believe it is a claims processing rule. And I believe that it is just clear. A claims processing rule can be handy. OK, I understand. It is a non mandatory claims processing. So where are you getting that? I was just going to the statute seems pretty clear that that it can't be it says it's not subject to being reopened. True. Why is that not mandatory? Well, your honor, that same exact statute says that once the prior order has been reinstated, that the noncitizen is not eligible for relief and shall be removed. That is the same type of mandate. That's not shall not be reopened. However, as in Bravo, Bravo and Cuenca, they recognize that the regulations have carve outs for withholding removal, removal, cat claim, U visas, T visas. All of those are available to someone whose case has been reinstated. So even though it appears to be mandatory and it has the language that's mandatory, in reality, the same exact part of the statute has been found to allow for exceptions. So that's why I would say that in this particular case as well, it should be accepted. So what would the bottom line? Your time is running out. I just want you to explain to me how you want us to decide this case. Well, your honor, I think that I mean, if you were in my shoes, so to speak, how would you what is the analytical framework that you would apply to get to the result that you want? Well, your honor, I would I would think that I would that I'd ask the court to remand this and find that it is a that 12 through 185 is a non-mandatory claims processing rule. We know it's a claims processing rule, but we don't the mandatory non-mandatory part. It seems to be at issue. But if we look at it in context of the other purported mandatory sections in that same exact statute, we know that it doesn't really seem to be mandatory. At least the other ones don't. Why would that be any different? Right. So I would ask the court to remand this case with instructions for the board to determine, you know, under what circumstances that that would trigger the ability for someone to reopen this case. So, for example, in Suaté-Ariana, they allowed for at least, you know, one of the theories was equitable tolling or sui sponte motion reopen. The sui of kind of a way to exempt non-mandatory claims processing rules, such as time and number bars to motions to reopen. So I personally think that that would be the proper vehicle, but I'm not with the board and I can't make that in the first instance. So that's what I ask the court to send back. We'll make sure you have time for rebuttal. I mean, one question on that would be, you know, we have this case Bravo Bravo, which kind of addressed the sui sponte authority and said, no, that does not work. So to get to where you want us to be, what would we say about that case? That it's been fully overruled? Yes, I think that's what Suaté-Ariana said. It specifically pointed out that Cuenca and Bravo were no longer controlling. Okay, we'll put two minutes on the We'll put two minutes on the clock for rebuttal. Okay. Thank you very much. Good morning, Your Honor. May it please the court, Shelley Clemmons on behalf of the Attorney General. This court should deny the petition for review because the board did not err in denying petitioner's motion to reopen based off 12, the strict statutory language in section 1231 A5. Cases decided since the initial briefing in this case preclude petitioner's claims and disposes of all of his or her claims. That change, which changed the label of this rule from that of jurisdictional to claims processing that undermines or changes those rulings. And as this court has noted in the previous argument in Cuenca, in Bravo Bravo, and also noted in our briefs, Gutierrez-Zavala, this court has addressed all the arguments finding that this particular statute does not conflict with 1229 A7. There are no temporal time limits, such that refuting petitioner's argument that it only applies during the reinstatement proceedings, that it is not overly punitive. And in this particular case, when we look at Svante or Ilana, we're still looking at the same rules. We have in this situation a case where the board said it did not have the authority and then to rule on petitioner's motion to reopen, specifically citing the language of 1231 A5. The government would dispute that that is a jurisdictional finding by the court because if you look at the very plain language of the statute, and as this court has noted time and time again, Cuenca, Bravo Bravo, and other cases, that is mandatory and unambiguous text that requires the court to require the board to decline to reopen the case where a reinstatement of the previous removal order had been entered. So what are we actually doing in reinstatement proceedings? Because petitioner can, in those circumstances, attempt to show gross miscarriage of justice, yes, in a reinstatement proceeding with respect to the underlying. Correct. So what's going on there? So had petitioner chosen to seek review of the board's denial or of the, I'm sorry, of DHS's issuance of the reinstatement order, what he could have then done is appealed that and he could have sought, I believe it's three factual underlying facts, whether or not he tried to prove that there was an error in finding that he was an alien that had been illegally reentered. But this court has consistently said at that point he could have collaterally attacked the underlying removal order asking for miscarriage of justice. But that's not the case here. Petitioner has basically forfeited his rights. Right. So now we're in the land of motions to reopen. Right. So what is distinct about in this context, when we remove these jurisdictional bars, what is distinct about a motion to, or how does the motion to reopen differ, or why is it so distinct from the reinstatement proceedings? In other words, why aren't they at base the same? Well, I'm assuming they're not based the same because Congress has expressed intent for reinstatement. Once an alien has illegally reentered following removal, sort of self-help, and then had his, remained here illegally, and then had a reinstatement order issued, Congress's intent was to streamline the removal process from that point. Yes. Got that. And to make, basically as this court has said, it's a less generous system at that point of what they can raise. And so Congress specifically cut that off. But why can't a motion to reopen accomplish the same purpose? Well, because Congress has not, has made it clear they don't want there to be so many bites at the apple. He had an opportunity to raise this purpose. Well, Congress has also allowed for motions to reopen, and the Supreme Court has said they're very important and blah, blah, blah. And they are important. And which is why a petitioner would also have the ability to do a withholding of removal or a CAD claim based off change circumstances or country conditions evidence, because we're not so blinded to poor conditions in other countries. And we certainly don't want to send somebody back to the same country. But in Perez-Guzman, yes. Let's hope the Attorney General agrees with that statement. But I'll just leave it at that. That's a political comment. We're not. No, no, it's a legal question. Yes. But the legal question is what types of relief are available. But in this particular instance, the language is very clear. And the court brought up the questions about whether or not this is a mandatory versus just a regular claims processing rule. And what we look at is if it's mandated by law or rule and whether it's flexible or if there's any carve outs. And there simply aren't. And so it's kind of an odd thing, because in footnote five of Suete Oriana says the government acknowledges that 1231A5 does not affect our court's jurisdiction to review the denial of a motion to reopen. OK. So that's kind of where we are now. Right. So the motion reopens been denied. We now look at it. So my first question is under what standard are we reviewing the denial post Suete Oriana? I think you'd be reviewing it for whether there was constitutional or legal error. And given the plain language of the statute and the fact that the government did raise this down below, there's no error in this particular case. I think it's important to look at what we talk a lot about what Suete Oriana did do, which is change this label. But let's talk about what Suete Oriana didn't do. It didn't change the mandatory language of the statute or state that the board could ignore the language of 1231A5 absent waiver or forfeiture. So it's a kind of an odd thing where, OK, it's claims processing rule, but it kind of becomes mandatory, doesn't it? I believe it's mandatory. But once it's mandatory, what do we have to review? I guess this would be one of those situations kind of like Suete Oriana. What's left to review is was there an inadvertent forfeiture that the board should have addressed. But what Suete didn't do was they didn't say that there are other avenues for relief. It didn't open the door to other avenues of relief. It just said the board has jurisdiction to look at it. But the plain language of the statute still precludes their authority, which is what the board found in this case, from doing anything other than what the statute mandates. So your opposing counsel took issue with it being mandatory. And one of the arguments he made was that we do allow people who are subject to reinstated removal orders to seek withholding of removal, notwithstanding the fact that you might read 1231A5 to preclude that. So how do you respond on that point? I would respond that that was something that this court addressed in Perez-Guzman, where the court noted that in addition to withholding and CAT, there's also the ability to seek U visas. And in that case, Perez-Guzman was discussing the language about why somebody couldn't apply for asylum, as opposed to withholding removal, where the language says no relief under Title 12 and asylum is in, I'm sorry, Chapter 12 and asylum is in Chapter 12. And the court noted that there could be various reasons. For instance, U visas came up afterwards, but also noting the language in the Supreme Court's ruling of Fernandez-Vargas or Fernandez-Vargas v. Bondi, not Bondi, different Attorney General, Fernandez-Vargas, where the court noted that it's not out of the realm of possibility that the court was discussing the differences between discretionary versus non-discretionary relief, and that that would be appropriate in this case to allow, based off changed circumstances, for a petitioner to argue that they shouldn't be removed back to their original country because of these changed circumstances, but it's a higher burden of proof. And that is kind of what this lower burden of proof is what they forfeit by illegally coming in and then trying to reopen the proceedings. So you're saying, as I understand it, that there's no constitutional or illegal error that's claimed here and that would then lead to denial on appeal? That is correct. Because the government very clearly, as this court noted and counsel conceded, we raised 1231A5 and noted that it was a statutory bar. The court noted it didn't have any authority under the language of the statute. And so we have preserved that issue in review, and the court was very clear. But regardless, at this point, and we've heard a lot of argument about the sua sponte nature, but at that time, the board came back and said it would also not entertain sua sponte or a claim of gross miscarriage of justice. And it's important to note that it didn't do so much that on jurisdictional grounds. It noted that it just didn't see a reason for that. Also, miscarriage of justice had to be raised in a collateral attack. That was before Bravo Bravo was issued that pulled sua sponte also into the language of 1231A5 as being precluded. But given that, it's very clear that the board then, thinking it still had discretion, didn't see a reason to grant sua sponte reopening. So therefore, remand at this point would be an idle and useless formality, both under the language of the statute and the fact the board's posture on the underlying reopening, denial of reopening was they just didn't see a reason to grant it in this particular case. Let me go back to Perez-Guzman. What is the justification for, maybe some of this is in regulations, for allowing a petitioner who's subject to a reinstated removal order to seek withholding of removal, but not to seek reopening? Let's see if I could pull that up real quick. I have that language. Basically, in that case, the court noted that there was there was a reasonable line that could be drawn between discretionary and non-discretionary relief. And with the practical import being that the petitioner had to meet a higher standard to get... Withholding being mandatory? Yes. Not necessarily allowing them to stay in the U.S., but ensuring they didn't go back to their initial country of removal. And the court noted that the Supreme Court has found that there's nothing inconsistent between the absolute terms of 1231A5 and the government's decision to make certain forms of relief available in reinstatement proceedings. But that's not the case here. We're not in reinstatement proceedings. We're in reopening proceedings. And because, in this case, Congress didn't carve out claims, and in Suatte, Orlando, the court did not carve out extra claims, such as miscarriage of justice. The plain language of the statute indicates it's not an exception to the statutory bar to motion to reopen, but still allows for relief for people who would meet that higher burden of proof. So I think right there, that is kind of the justification. Apologize if it's not very artfully made, but these arguments have been addressed by this court and rejected as found to be an appropriate distinction between discretionary and non-discretionary. But could the government change its regulations and decide that someone who's subject to a reinstated removal order cannot seek withholding of removal? Or is that something that is actually statutorily required through some other source? Because the reinstate, you know, this provision we're looking at says you're not eligible. You may not apply for any relief. And withholding of removal seems like it might be relief. But it's nonetheless allowed. In very limited circumstances and non-discretionary, higher burden of proof. Right. And so what I'm asking is, could the government disallow someone like this in this situation from seeking withholding of removal? I don't think so, because I think that this court has time and time again said that that's a permissible thing. But I guess that would require changing regulations. And then this court would have to assess whether that's appropriate. But I don't think at this point that the court, that the government. Yeah, I guess I was more asking as a matter of statutory interpretation between this provision and other provisions. Because I think what I'm trying to understand is it's mandatory. Your position is it's mandatory as to motions to reopen. But it's not necessarily mandatory as to withholding of removal. And I take your position to be that's because withholding of removal is itself a mandatory form of relief. And that's the distinction, perhaps. Yes. Well, it's also, it's not a motion. It's not something being granted as part of this motion to reopen. It's something that's grant that it comes about once the person has is reinstated and they give a reasonable fear interview. And then it's determined that they might have a reasonable fear and they're entitled to these separate proceedings. You're drawing the line between the motion to reopen and then the reinstatement proceedings. Yes, that's what I'm doing. So if the court doesn't have any further questions, we don't believe that SWATI Orlano changes the landscape in this particular case. SWATI Orlano's holding was very limited and very unique to the circumstances where they were noting that the government raised 1231A5 very, very late in the proceedings after both the board had decided on the merits and therefore they had forfeited. But it's not applicable in this case. And we believe that the language in Bravo and Bravo and Quinta, yes, they did use the words jurisdictional, but they also based it on the very mandatory and very unambiguous text of the statute. And therefore, we believe that just changing this label from jurisdictional to mandatory claims processing doesn't change the law in this regard. The court has no further questions. The government will submit. I have a question, but it's unrelated to the argument. And that's just I note on the docket sheet that you're listed as an assistant U.S. attorney. Is that from the District of Columbia or where? No, I'm a trial attorney with the Office of Immigration Litigation. I used to be an assistant U.S. attorney. I don't know if there's... But now you're at DOJ. But now I'm at DOJ. So thank you. I was just curious how that happened. There are attorneys who've been seconded not only from the U.S. attorney, but from other agencies. So I was just curious. Thank you. Thank you. Thank you. I'd like to address just like the practical aspect of these types of proceedings in that as a general rule, if someone is ordered removed, they're physically removed, they come back to the United States, you know, the general motion reopen period is 90 days, right? So anything after 90 days, then someone is going to need to use some type of equitable remedy in order to overcome the plain language of the statute as far as the bars to temporal bars and potentially the numerical bars to reopening. And, you know, the fact that the court in Suate Oriana made this distinction that 231 or 1321, 1321A5 is a claims processing rule rather than a jurisdictional bar. It seems odd to me that the court would do that for no reason, right? And just, it's a distinction without a difference. It doesn't make sense the reason why they would do that if there weren't another reason for that. And that is to show that it is a non, they didn't say it, and I'm not saying they said it, but a non, it's a non-mandatory claims processing rule. Otherwise, it seems like it would be a distinction without a difference. I don't know. I mean, we have a lot of rules in lots of areas that are not jurisdictional, but are nonetheless mandatory claims processing rules. So this wouldn't be particularly exotic. I think that after, let's see, as far as I can recall, in 2008 is when Garcia de Rancon came out, right? And so we're in 2020, 25 when Suate or 24 when Oriana came out, 16 years of precedent that went along with this. And just to change the name, it seems like that's a lot to think about. Maybe they did it just to make sure that all the books were correct, Your Honor. But I'm just thinking. But in another thing is, you know, even with the, even under the jurisdictional, the absolute language that says this cannot be reopened or reviewed under 123185, that as the board in this case stated, that there still did remain some type of a collateral attack. So even when we're talking about a jurisdiction, and that would be in the context of the review of the reinstatement order. And one of the reasons that was put forth for that is that it's like a safety valve. But in addition, that it's going to expedite the removal of the non-citizens in this procedure. Well, you know, the petitioner is currently scheduled for its merits hearing on this particular, on his withholding of removal case for December 3rd, 2029. His case was reinstated in 2014. That's 15 years. It does not seem to be very expeditious. The court doesn't have any other questions. So let me just understand what his status is between now and the time of the hearing. He is in withholding of removal proceedings. He's out of custody and he's in withholding of removal proceedings. Now, ostensibly, let's say the worst happens and we don't prevail. Then we can appeal that to the board. And then we would appeal that to the court. And in those proceedings, we would be able to attack the, collaterally attack the underlying, the underlying proceedings according to the board's decision here. Again, it doesn't seem like a good use of time and resources. It seems like a motion to reopen would be a much better way to do this. Appreciate your argument. Thank you. Thank you. Okay. Thank you. Thank both counsel. This case is submitted.
judges: McKEOWN, PAEZ, BRESS